[Cite as *Spitulski v. Toledo City School Dist. Bd. of Edn.*, 2017-Ohio-2692.]

IN THE COURT OF APPEALS OF OHIO
SIXTH APPELLATE DISTRICT
LUCAS COUNTY


Ronald P. Spitulski

    Appellee

v.

Board of Education of the Toledo
City School District and Heather
Baker and James Gault

    Appellants

Court of Appeals No. L-16-1225

Trial Court No. CI0201501111


**DECISION AND JUDGMENT**

Decided: May 5, 2017

* * * * *

Dennis D. Grant and Jolene S. Griffith, for appellee.

Roman Arce and Shawn A. Nelson, for appellants.

* * * * *

**JENSEN, P.J.**

{¶ 1} In this accelerated appeal, defendants-appellants, James Gault and Heather Baker, appeal the October 4, 2016 judgment of the Lucas County Court of Common Pleas, which rejected their assertion of immunity under R.C. 2744.01 et seq. For the reasons that follow, we affirm the trial court's judgment, in part, and reverse, in part.

## I.  Background

**{¶ 2}** Sixty-seven-year-old Ronald Spitulski was employed by the Board of Education ("the Board") of the Toledo City School District ("the District") for nearly 25 years, most recently as a supervisor of the pupil personnel center.  He was responsible for conducting suspension appeal and expulsion hearings.  He reported to Heather Baker, the director of pupil placement and child adjustment services, and Baker reported to James Gault, then the chief academic officer.

### A.  Issues arise with Spitulski's work performance.

**{¶ 3}** Between November of 2012, and May of 2013, Baker received complaints that Spitulski had acted unprofessionally in his treatment of a non-attorney "parent advocate," several parents, and a character witness.  In addition to this, on May 8, 2013, Spitulski admitted to Baker that he lost almost a year's worth of digitally-recorded hearings that he conducted during the 2012-2013 school year.

### B.  The CBA outlines the disciplinary process.

**{¶ 4}** Spitulski was an administrative employee of the Board, and as such, was a member of the Toledo Association of Administrative Personnel ("TAAP").  TAAP and the Board are parties to a collective bargaining agreement ("CBA").  The CBA provides procedures for addressing disciplinary concerns.  Those procedures call for progressive discipline where appropriate, and they set forth a three-step disciplinary process:  (1) an informal level, (2) a continuing disciplinary investigation ("CDI"), and (3) a CDI report.

**{¶ 5}** Under step one, an administrator who wishes to informally discuss a matter which may lead to a CDI must consult with her supervisor and notify the employee and

2.

TAAP in writing on a prescribed form known as "a buff sheet." The buff sheet must describe (1) the conduct in question, (2) the date, time, and place of the meeting requested, and (3) the right of the employee to have a TAAP representative present. Under the CBA, every effort must be made to resolve matters at the informal level. If the matter is resolved, a record of the meeting and the prescribed resolution must be placed in the employee's personnel file.

{¶ 6} If the matter is not resolved at step one, or if it is a "serious matter," step two provides for a CDI, also referred to as "a hearing on the record." The supervising administrator or TAAP may submit a written request to the personnel office for a CDI within 10 days from knowledge of the serious matter, or within five working days from the date of the informal meeting. A TAAP representative shall be permitted to be present for a CDI.

{¶ 7} Finally, under step three, a CDI report is generated. A designated human resources representative may hear testimony, examine witnesses, and review all relevant material pertaining to the CDI. He or she must then issue a report to the superintendent (or his designee), who must render a decision or recommend action to the Board. A copy of the superintendent or Board's decision must be sent to all parties concerned and placed in the employee's file. The employee may submit a written response which shall be attached to the decision. The employee or TAAP may then appeal from the decision. If the decision is to terminate the employee's contract, such termination must comply with Article VII, section A of the CBA. This provision of the CBA requires compliance with

3.

the Ohio Revised Code, including R.C. 3319.16, relating to the termination of a contract by a board of education.

{¶ 8} The CBA makes clear that an employee whose conduct is the subject of investigation is entitled to (1) timely and adequate notice of the conduct complained of on a prescribed form, (2) reasonable time to prepare a response, (3) representation by the TAAP; and (4) other reasonable procedures affording due process.  If an investigation is not performed in accordance with the procedures set forth in the CBA, it cannot be considered part of the employee's personnel file, and neither the fact of the investigation nor statements made during the investigation may be used in any subsequent Board proceeding.  The CBA also specifies that while progressive discipline must be followed where appropriate—providing written warnings and suspensions in lieu of termination— a written warning is not always required and immediate termination may be appropriate in cases of serious misconduct.

### C.  Baker initiates the disciplinary process.

{¶ 9} On May 23, 2013, Baker emailed Gault requesting a hearing on the record for Spitulski.  She cited the following reasons for requesting the hearing: (1) failure to perform job duties, (2) failure to maintain professional relationships and behavior with parents and students, and (3) insubordination.  On May 31, 2013, Gault contacted the District's chief human resources officer to request a hearing.  He cited the following reasons for his request:  (1) violation of licensure code of professional conduct for Ohio educators, (2) violation of board policy section G: Personnel; Title; Staff-Student

4.

Relations, (3) failure to perform job duties, and (4) insubordination. He further elaborated as to the conduct giving rise to his request as follows:

Used inappropriate language during a suspension hearing for a student.

Acted in a very unprofessional way towards parents in hearings and while scheduling hearings. Several parents have refused to allow him to hear their cases because they felt he was rude, unprofessional, and unfair. These cases had to be heard by an alternate hearing officer.

He has failed to maintain accurate hearing records or hearing dispositions. Parent and school personnel have verified that one particular disposition was incorrect and was not what was presented in the hearing. When questioned about it, he refused to adjust it, stating it was correct.

Upon request, Ron was unable to supply any audio hearing tapes from any hearings held in his office this school year up until the month of April. He states he is unsure of what happened to them. This is in violation of Ohio Revised Code 9.69 [sic].

{¶ 10} A hearing on the record took place on August 19, 2013. Gault presented the case to the District's hearing officer, Annmarie Heldt, and Baker and Spitulski testified. On September 9, 2013, Heldt issued a written recommendation to the Board, recommending that Spitulski be terminated. The District's chief human resource officer, Cheryl Spieldenner, recommended that Heldt's recommendation be upheld.

5.

### D. The Board terminates Spitulski's employment.

{¶ 11} On October 4, 2013, the District's treasurer provided written notice under R.C. 3319.16 of its intent to terminate Spitulski's employment. Spitulski submitted a written request for arbitration to be conducted by an independent referee, and the Board invoked the hearing procedures provided in R.C. 3319.16. The Ohio Department of Education appointed a neutral referee, attorney James Gucker. On May 5 and 6, 2014, Gucker considered evidence and heard testimony from a number of witnesses. On August 14, 2014, he issued a recommendation to the Board concluding that "good and just cause" did *not* exist to terminate Spitulski's employment agreement. Notwithstanding the referee's recommendation, the Board passed a resolution on December 16, 2014, terminating Spitulski's employment contract. The contract otherwise would have expired on July 31, 2016.

### E. Spitulski seeks recourse.

{¶ 12} Spitulski dually filed a charge of discrimination with the Ohio Civil Rights Commission ("OCRC") and the Equal Employment Opportunity Commission ("EEOC") in September of 2013, alleging gender, disability, and age discrimination. He later sought permission to withdraw the charge so he could pursue the matter in the common pleas court. The OCRC granted his request on July 17, 2014. On January 13, 2015, following the Board's termination of his employment contract, Spitulski filed a complaint against the Board, Gault, and Baker alleging eight claims: (1) termination without good and just cause in violation of R.C. 3319.16; (2) tortious violation of rights; (3) age discrimination; (4) disability discrimination; (5) retaliation in violation of R.C.

6.

4112.02(I); (6) intentional infliction of emotional distress; (7) false light invasion of privacy; and (8) intentional interference with business relationship.

{¶ 13} Relevant to the present appeal, Spitulski alleged in his complaint that Gault instructed Baker to "marshal evidence to use in terminating Spitulski," and that Baker, at Gault's instruction, began creating documentation designed to lead to his discharge. Spitulski said that Baker told him "They're asking me when you're going to retire," and "you've got too much gray hair."[1]  And he claimed that the District tried to coerce him into signing an unlawful retirement agreement.  He also alleged that after filing his OCRC charge, the District threatened to convert his paid suspension to an unpaid suspension, and that it rejected the independent referee's recommendation in retaliation for having filed the OCRC charge.

{¶ 14} In an order dated May 29, 2015, the trial court dismissed counts two and eight of Spitulski's complaint.  It dismissed count one in an order dated September 10, 2015.  In an order dated February 3, 2016, it dismissed Spitulski's claim for punitive damages and attorney's fees.  And in an order dated October 3, 2016, it dismissed counts four and seven.

{¶ 15} In its October 3, 2016 judgment, the trial court denied summary judgment as to counts three (age discrimination), five (retaliation), and six (intentional infliction of emotional distress) of the complaint.  In doing so, it rejected Gault and Baker's assertions that they were statutorily immune from liability under R.C. 2744.01 et seq. as employees

---

[1] Baker denies making these comments.

7.

of a political subdivision.  Gault and Baker's present appeal is limited to this immunity determination by the trial court.  They assign error as follows:

> 1.  The Lucas County Court of Common Pleas erred in concluding that Appellant, James Gault and Heather Baker, are not immune from liability as to Plaintiff's claim of age discrimination.

> 2.  The Lucas County Court of Common Pleas erred in concluding that Appellant, James Gault and Heather Baker, are not immune from liability as to Plaintiff's retaliation claim.

> 3.  The Lucas County Court of Common Pleas erred in concluding that Appellant, James Gault and Heather Baker, are not immune from liability as to Plaintiff's claim of intentional infliction of emotional distress.

## II.  Standard of Review

{¶ 16} Appellate review of a summary judgment is de novo, *Grafton v. Ohio Edison Co.,* 77 Ohio St.3d 102, 105, 671 N.E.2d 241 (1996), employing the same standard as trial courts.  *Lorain Natl. Bank v. Saratoga Apts.,* 61 Ohio App.3d 127, 129, 572 N.E.2d 198 (9th Dist.1989).  The motion may be granted only when it is demonstrated:

> (1) that there is no genuine issue as to any material fact; (2) that the moving party is entitled to judgment as a matter of law; and (3) that reasonable minds can come to but one conclusion, and that conclusion is adverse to the party against whom the motion for summary judgment is made, who is entitled to have the evidence construed most strongly in his favor.  *Harless*

8.

*v. Willis Day Warehousing Co.*, 54 Ohio St.2d 64, 67, 375 N.E.2d 46 (1978), Civ.R. 56(C).

{¶ 17} When seeking summary judgment, a party must specifically delineate the basis upon which the motion is brought, *Mitseff v. Wheeler*, 38 Ohio St.3d 112, 526 N.E.2d 798 (1988), syllabus, and identify those portions of the record that demonstrate the absence of a genuine issue of material fact. *Dresher v. Burt*, 75 Ohio St.3d 280, 293, 662 N.E.2d 264 (1996). When a properly supported motion for summary judgment is made, an adverse party may not rest on mere allegations or denials in the pleadings, but must respond with specific facts showing that there is a genuine issue of material fact. Civ.R. 56(E); *Riley v. Montgomery*, 11 Ohio St.3d 75, 79, 463 N.E.2d 1246 (1984). A "material" fact is one which would affect the outcome of the suit under the applicable substantive law. *Russell v. Interim Personnel, Inc.*, 135 Ohio App.3d 301, 304, 733 N.E.2d 1186 (6th Dist.1999); *Needham v. Provident Bank*, 110 Ohio App.3d 817, 826, 675 N.E.2d 514 (8th Dist.1996), citing *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 248, 106 S.Ct. 2505, 91 L.Ed.2d 201 (1986).

### III. Law and Analysis

{¶ 18} Gault and Baker's three assignments of error challenge the trial court's finding that they are not statutorily immune from liability as to Spitulski's age discrimination, retaliation, and intentional infliction of emotional distress claims, respectively. Their assignments of error examine the court's ruling in the context of each specific claim.

9.

**{¶ 19}** Spitulski maintains that the question of immunity is not dependent upon the validity of each specific claim; rather, he argues, "the essential question is whether [Gault and Baker] are immune at all." He identifies a number of factual issues purportedly calling into question whether Gault and Baker's conduct was malicious, in bad faith, or wanton and reckless, thereby defeating their claim of immunity. He insists that these questions must be answered by the trier of fact, thus rendering summary judgment inappropriate.

## A. R.C. 2744.03(A)(6)

**{¶ 20}** Where a person is an employee of a political subdivision, under R.C. 2744.03(A)(6), he or she will be immune from liability for "injury, death, or loss to person or property allegedly caused by any act or omission in connection with a governmental or proprietary function," except under limited circumstances. That statute provides:

> (6) In addition to any immunity or defense referred to in division (A)(7) of this section and in circumstances not covered by that division or sections 3314.07 and 3746.24 of the Revised Code, the employee is immune from liability unless one of the following applies:
>
> (a) The employee's acts or omissions were manifestly outside the scope of the employee's employment or official responsibilities;
>
> (b) The employee's acts or omissions were with malicious purpose, in bad faith, or in a wanton or reckless manner;

(c)  Civil liability is expressly imposed upon the employee by a section of the Revised Code. * * *

{¶ 21} "R.C. 2744.03(A)(6) operates as a presumption of immunity."  (Citation omitted.)  *Jackson v. McDonald*, 144 Ohio App.3d 301, 308, 760 N.E.2d 23, 760 N.E.2d 24 (5th Dist.2001).  Generally, whether a political subdivision employee is entitled to immunity is a question of law.  *Pernell v. Bills*, 6th Dist. Lucas No. L-09-1082, 2009-Ohio-6493, ¶ 10.

{¶ 22} "Malicious purpose" is the "willful and intentional design to do injury, or the intention or desire to harm another, usually seriously, through * * * unlawful or unjustified" conduct.  *Schoenfield v. Navarre*, 164 Ohio App.3d 571, 2005-Ohio-6407, 843 N.E.2d 234, ¶ 22 (6th Dist.), quoting *Cook v. Hubbard Exempted Village Bd. of Edn.*, 116 Ohio App.3d 564, 569, 688 N.E.2d 1058 (11th Dist.1996).  "Bad faith" connotes a "dishonest purpose, moral obliquity, conscious wrongdoing, breach of a known duty through some ulterior motive or ill will partaking of the nature of fraud."  *Id.*, quoting *Jackson* at 309.  "Wanton misconduct is the failure to exercise any care toward those to whom a duty of care is owed in circumstances in which there is great probability that harm will result."  *Anderson v. City of Massillon*, 134 Ohio St.3d 380, 2012-Ohio-5711, 983 N.E.2d 266, ¶ 33 *reconsideration denied* 133 Ohio St.3d 1511, 2012-Ohio-6209, 979 N.E.2d 1289.  And "reckless conduct" is "characterized by the conscious disregard of or indifference to a known or obvious risk of harm to another that is unreasonable under the circumstances and is substantially greater than negligent conduct."  *Id.*

11.

**{¶ 23}** While a political subdivision employee's entitlement to immunity is ordinarily a question of law, whether there exists malice, bad faith, and wanton or reckless behavior are generally questions of fact to be resolved by the jury. *Schoenfield* at ¶ 24. "Summary judgment is appropriate only when the facts are clear and fail to rise to the level of conduct that could be construed as malicious, in bad faith, or wanton and reckless." *Long v. Vill. of Hanging Rock*, 4th Dist. Lawrence No. 09CA30, 2011-Ohio-5137, ¶ 18.

## B. The parties' arguments.

**{¶ 24}** In their first assignment of error, Gault and Baker insist that they are entitled to immunity as to Spitulski's age discrimination claims because "R.C. 2744.03(A)(6)(a) and (b) require an extreme level of self-interested misconduct to overcome a political subdivision employee's immunity." They deny that their conduct rises to this level. They urge that they were merely performing their job duties in response to multiple complaints from parents and guardians and Spitulski's unexplained loss of nearly a year's worth of recorded hearings. They further claim that for purposes of R.C. 2744.03(A)(6)(c), civil liability is not "expressly imposed" under R.C. 4112.01(A)(2) and R.C. 4112.02(A) so as to defeat immunity.

**{¶ 25}** In their second assignment of error, Gault and Baker claim that they are entitled to immunity concerning Spitulski's retaliation claim based on the undisputed timing of their involvement relative to Spitulski filing his September 2013 OCRC charge. Specifically, they claim that aside from testifying at the referee hearing in May of 2014, Baker's involvement ended when she testified at the hearing on the record in August of 12.

2013, and they maintain that there is no evidence of when or if Baker even learned of the OCRC charge. With respect to Gault, they claim that his involvement ended on October 4, 2013, when the District issued its notice of intent to terminate Spitulski, and even then, his involvement between September 2013 and October 4, 2013, was limited to recommending that the District follow through with issuing notice of intent to terminate based on the hearing officer's recommendation. They claim that everything after October 4, 2013, was governed by the statutorily-mandated process set forth in R.C. 3319.16, and under that statute, the Board members were solely responsible for the December 2014 decision to terminate.

{¶ 26} Finally, in their third assignment of error, Gault and Baker claim that they are entitled to immunity on Spitulski's claim for intentional infliction of emotional distress because R.C. 2744.03(A)(6)(c) is inapplicable, and under R.C. 2744.03(A)(6)(a) and (b), Spitulski cannot show that they acted outside the scope of their employment or maliciously, in bad faith, or wantonly and recklessly. They maintain that the complaints giving rise to disciplinary action came from parents, guardians, relatives, or supporters of the District's students—not from Baker or Gault themselves. They insist that Baker merely listened, documented, and reported the complaints up the chain of command to Gault (along with the information that Spitulski admittedly lost months' worth of recorded hearings); requested a hearing on the record; and obtained statements from the complaining parties. Gault merely arranged for the hearing and presented the evidence to the District hearing officer. Others made the decisions after this point. They claim that

13.

reasonable minds can conclude only that they acted, or attempted to act, in good faith in fulfilling their job duties.

{¶ 27} In response, Spitulski first argues that Baker and Gault lack statutory immunity under R.C. 2744.09(B) to the extent that they were sued in their official capacities. With respect to R.C. 2744.03(A)(6), Spitulski does not argue on appeal that R.C. 2744.03(A)(6)(a) or (c) bars Gault and Baker's claims of immunity. He argues only that their acts were committed with malicious purpose, in bad faith, or wantonly or recklessly under R.C. 2744.03(A)(6)(b).

{¶ 28} Spitulski further contends that in the arguments in support of their assignments of error, Baker and Gault improperly address the merits of his claims. He insists that "[n]owhere in R.C. 2744.03(A)(6) does it state that immunity centers upon the validity of the civil claim." He, therefore, identifies a number of "fact issues" that purportedly call into question whether Baker and Gault's conduct negated their claim of immunity under R.C. 2744.03(A)(6)(b):

- Whether Baker's emails of May 8, 2013, reflect that she was using Spitulski as a scapegoat to preserve her own reputation because she was concerned that Spitulski's "inadvertent mislocation" of recordings had put them in "an ugly situation;"

- Whether the true reason for the CDI was because Spitulski had "too much gray hair" and "they" wanted him to retire;

- Whether Baker deprived Spitulski of due process and his contractual right to progressive discipline by failing to issue buff sheets

14.

relating to five of the complaints against him and his "mislocation" of the recordings;

- Whether Baker purposely failed to properly investigate five complaints by not discussing them with Spitulski;

- Whether Gault deprived Spitulski of the due process right to confront his accusers by using their written statements at the CDI;

- Whether Gault made an untimely request for the CDI hearing;

- Whether Baker falsely told Heldt that Spitulski violated FERPA and Gault falsely informed Heldt that Spitulski violated the non-existent R.C. 9.69;

- Whether at the R.C. 3319.16 hearing, Baker and Gault exceeded the grounds for termination by prosecuting him with events "not encompassed by the notice of such grounds;"

- Whether Baker and Gault prosecuted him at the CDI and R.C. 3319.16 hearings with "contractually illicit documents;"

- Whether Gault improperly relied on prior discipline and attempted to rely on an inapplicable Board policy; and

- Whether Gault's recommendation caused the Board to reject the referee's report following receipt of the OCRC notice of right to sue.

## C. Our analysis.

{¶ 29} The trial court found that "the record evidence and applicable law lead to the conclusion that Baker and Gault are not immune from liability because there was a sufficient causal link between their discriminatory words and actions and the Board's decision to terminate Spitulski." It never identified which, if any, R.C. 2744.03(A)(6) factor negated Gault and Baker's claim of immunity. Spitulski argues that provision (b) operates to negate Baker and Gault's statutory immunity. He does not argue that (a) or (c) apply. We, therefore, limit our discussion to this particular exception to statutory immunity.

{¶ 30} As Spitulski points out, our review of this appeal is limited to the trial court's immunity determination. *Coterel v. Reed*, 2d Dist. Greene No. 2015-CA-69, 2016-Ohio-7411, ¶ 15. We do not review whether there is factual support for each of the elements of the claims for relief. *Id.* We must make all permissible inferences and resolve all questions of credibility in Spitulski's favor to determine whether genuine issues of material fact exist, so that a reasonable jury could find that Gault and Baker acted with a malicious purpose, in bad faith, or in a wanton or reckless manner. *Id.* at ¶ 12.

{¶ 31} To be sure, at this stage we cannot review the trial court's summary judgment decision as it relates to the merits of Spitulski's claims. *Id.* at ¶ 8, 12, 15. Having said this, we cannot simply disregard the relationship between the questions of fact identified by Spitulski and the nature of the claims that remain pending in the trial court. We must to some extent consider how the purported questions of fact relate to the

16.

remaining claims. The only claims that remain viable are Spitulski's age discrimination, retaliation, and intentional infliction of emotional distress claims. All his other claims were disposed of on summary judgment.

{¶ 32} As to Spitulski's age discrimination claim, the trial court denied summary judgment because it found that Baker's questions about when he was going to retire and her statement that the district wanted to discharge him because he had too much gray hair created an issue of fact as to whether the action taken against Spitulski was motivated by age animosity. As to Spitulski's retaliation claim, the trial court pointed to action taken by Spieldenner—not Baker or Gault— as creating an issue of fact as to whether the Board took action against him in retaliation for engaging in protected activity.[2] And as to the intentional infliction of emotional distress claim, the trial court cited alleged abuses of power by Baker and Gault during the disciplinary proceedings as creating questions of fact precluding summary judgment on the claim.

{¶ 33} Generally, issues regarding malice, bad faith, and wanton or reckless behavior are questions presented to the jury. *Schoenfield*, 164 Ohio App.3d 571, 2005-Ohio-6407, 843 N.E.2d 234, ¶ 24. But where the record lacks evidence demonstrating that the political subdivision employee acted in such a manner, a trial court correctly grants summary judgment. *Price v. Telb*, 6th Dist. Lucas No. L-08-1099, 2009-Ohio-3496, ¶ 9.

---

[2] Even Spitulski's complaint alleges no retaliatory conduct committed specifically by Baker and Gault.

17.

**{¶ 34}** Here, after considering the questions of fact identified by Spitulski in the context of the trial court's rationale for denying summary judgment on his age discrimination, retaliation, and intentional infliction of emotional distress claims, we find that (1) both Baker and Gault are entitled to statutory immunity as to the retaliation claim because there exists no question of fact as to whether they acted with malice, in bad faith, wantonly, or recklessly, and (2) neither is entitled to immunity as to the intentional infliction of emotional distress claim because there exists a question of fact as to whether they acted with malice, in bad faith, wantonly, or recklessly. As to the age discrimination claim, while only Baker's statements were identified by the trial court in addressing the facts specific to that claim, the trial court pointed to evidence of Gault's participation in the proceedings leading to Spitulski's discharge in support of its decision to deny summary judgment to Baker and Gault individually. We, therefore, find that neither Baker nor Gault is entitled to statutory immunity as to Spitulski's age discrimination claim because there exists a question of fact as to whether they acted with malice, in bad faith, wantonly, or recklessly in pursuing disciplinary proceedings against him.

**{¶ 35}** Finally, we address Spitulski's argument that Baker and Gault lack statutory immunity under R.C. 2744.09(B) because they were sued both as individuals and "in their official capacities." Ohio case law recognizes that "R.C. 2744.09(B) removes immunity only as to the political subdivision and does not remove immunity from the employees of political subdivisions." *Kravetz v. Streetsboro Bd. of Educ.*, 11th Dist. Portage No. 2011-P-0025, 2012-Ohio-1455, ¶ 32, citing *Zumwalde v. Madeira &*

18.

*Indian Joint Fire Dist.*, 128 Ohio St.3d 492, 2011-Ohio-1603, 946 N.E.2d 748, syllabus. We, therefore, reject this argument.

{¶ 36} Accordingly, we find Baker and Gault's second assignment of error well-taken, and we find their first and third assignments of error not well-taken.

## IV. Conclusion

{¶ 37} We find that the trial court erred in denying Baker and Gault's claim of statutory immunity as to Spitulski's retaliation claim, however, we find that the trial court did not err in denying Baker and Gault's claim of statutory immunity as to Spitulski's age discrimination and intentional infliction of emotional distress claims. We, therefore, affirm, in part, and reverse, in part, the October 4, 2016 judgment of the Lucas County Court of Common Pleas. We remand this matter to the trial court for proceedings consistent with this decision. Gault and Baker are ordered to pay the costs of this appeal under App.R. 24.

Judgment affirmed, in part,<br>
and reversed, in part.

A certified copy of this entry shall constitute the mandate pursuant to App.R. 27. *See also* 6th Dist.Loc.App.R. 4.

Arlene Singer, J. _____

_____
JUDGE

Thomas J. Osowik, J. _____

James D. Jensen, P.J. _____
CONCUR.

_____
JUDGE

_____
JUDGE